UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MOLLY M. WARE,<br><br>    Plaintiff,<br><br>  v.<br><br>THE GEO GROUP, INC.,<br><br>    Defendants. | No. C09-5159RBL<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

  This matter is before the court on Defendant's Motion for Summary Judgment [Dkt. #12] and Plaintiff's Motion for Partial Summary Judgment [Dkt. #22]. The case involves claims by Molly M. Ware arising from her employment with The GEO Group, Inc. ("GEO"). Ware's complaint alleges that she was sexually harassed by another GEO employee and that, after she complained of the harassment, GEO failed to take appropriate remedial action and then terminated her in retaliation for making the claims.

  Defendants seek Summary Judgment on all of these claims. Plaintiff seeks Partial Summary Judgment on the retaliation claim. Ware argues that GEO has failed to articulate a legitimate, nondiscriminatory reason for her termination and, therefore, that the Court should grant Partial Summary

ORDER ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT
Page 1

Judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part. Plaintiff's Motion for Partial Summary Judgment is DENIED.

**A. Factual Background.**

Molly Ware was employed by GEO as a detention officer at the Northwest Detention Center from January of 2006 to March of 2008. In November of 2007, Ware claims to have been subjected to sexual remarks by a co-worker, Adam Hibbitt. On or about December 3, 2007, Ware spoke with Ethics Officer, Kathy Lopez, about Officer Hibbitt's comment, but did not feel it was necessary to file a formal complaint. The following day, Lopez spoke to Hibbitt about Ware's allegations. At that time, Hibbitt denied all harassment and told Lopez that he had been sexually harassed by Ware. On or about December 7, Officer Lopez told Ware that she had spoken to Hibbitt and expressed to Ware that both she and Hibbitt should "end this" and "keep it professional" at work. Officer Lopez also told Ware that her son and Hibbitt were "best friends" and that she had known Hibbitt "for a long time." According to Ware, these comments made her feel that Officer Lopez did not take her complaint seriously.

On or about December 10, Ware submitted another complaint regarding the sexual harassment to Captain Billy Gabalis, a supervisor at the facility. Captain Gabalis told Ware that he would speak to Officer Lopez; however, nothing more was done by Captain Gabalis regarding Ware's complaint. Ware stated in her deposition that after her complaint to Officer Lopez, Hibbitt ceased any and all harassment, treated her professionally, and that she would feel comfortable working with him again.

On or about December 15, 2007, Ware was suspended from her employment with GEO because she was the subject of an investigation by the facility. According to GEO, the investigation was initiated by federal officials, other detention officers (not including Hibbitt), and detainees. The investigation involved reports of officer misconduct, alleging that Ware had sex with detainees in the housing unit, and brought contraband into the facility. According to GEO, the investigation concluded with a sustained finding that Ware was observed by Officers and detainees blowing kisses, flirting, and rubbing up against

ORDER ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT
Page 2

detainees. The investigation did not involve Hibbitt or Lopez, but was conducted by Captain Gabalis.

After Captain Gabalis completed his investigation, the investigation documents were reviewed by James Black and John E. Brown, who was at that time Vice President of GEO's Western Region. Neither Black nor Brown had knowledge of Ware's complaints regarding Officer Hibbitt; however, they each recommended Ware's termination. On or about March 25, 2008, Ware was terminated from her employment with GEO.

**B.     Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**C.     Hostile Work Environment Claim.**

Ware first claims that GEO engaged in unlawful employment practices by failing to take prompt and appropriate remedial action in response to her complaint of sexual harassment and hostile work environment. She argues that this failure was a result of intentional sex discrimination on the part of GEO and in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and RCW 49.60.180.

To survive summary judgment on her claim of hostile work environment, Ware must show a

genuine issue of fact as to whether a reasonable woman would find the workplace so objectively and subjectively hostile toward women as to create an abusive working environment. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). When the evidence is viewed in the light most favorable to the Plaintiff, it could suggest to a reasonable jury that Ware was a victim of sexual harassment. As noted by Ware, however, an employer is only liable for an employee's abusive acts if, after the employer learns of the alleged conduct, it fails to take adequate remedial measures. *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). Ware claims that GEO did not take appropriate remedial action because Hibbitt was not adequately "disciplined."

The extent of remedial action or discipline required under Title VII depends on the seriousness of the alleged offense. *Id*. at 882. While Ninth Circuit courts have recognized that a mere oral reprimand is rarely enough to deter future harassment, they have also recognized that, in some instances, an oral rebuke is sufficient to stop the unlawful conduct. *See Intlekofer v. Turnage*, 973 F.2d 773, 779-80 (9th Cir. 1992). This is especially true when the employer is responding to a first complaint of sexual harassment. *Id*.

Officer Lopez's incident memorandum noted that Ware did not believe it was necessary to file a formal complaint against Hibbitt. Additionally, attached to the incident memorandum was a memorandum written by Officer Hibbitt stating that it was Ware who had sexually harassed him. Given Ware's reluctance to file a formal complaint and the "he said, she said" nature of the dispute, Officer Lopez's decision to orally reprimand both Hibbitt and Ware was appropriate "discipline" proportionate to the seriousness of the alleged offense.

Further, it is not disputed that any harassment ceased after Lopez spoke to Hibbitt. Plaintiff cites to *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995) for the proposition that GEO was required to do more in response to Ware's complaint. *Fuller*, however, is distinguishable from the case at bar. The *Fuller* Court did recognize that the mere coincidental end of the harassment does not protect the employer

ORDER ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT
Page 4

from liability. *Fuller*, 47 F.3d at 1529. However, in *Fuller*, the employer completely failed to act in response to the employee's complaint. *Id*. The Court stated:

> Title VII does not permit employers to stand idly by once they learn that sexual harassment has occurred. To do so amounts to a ratification of the prior harassment. We refuse to make liability for ratification of past harassment turn on the fortuity of whether the harasser, as he did here, voluntarily elects to cease his activities, for the damage done by the employer's ratification will be the same regardless.

*Id*. GEO did not stand "idly by." Lopez orally reprimanded Hibbit the day after Ware made her complaint. In her deposition, Ware not only admitted that all harassment by Hibbitt stopped after her complaint, but also that she would feel comfortable enough around Hibbitt to work with him again. Through these comments, Ware concedes that GEO's response to her complaint was both effective and appropriate and that the workplace ceased to be a "hostile environment" after GEO was made aware of the alleged harassment *and responded* to her complaint. Ware has made no allegation that Hibbitt, or anyone else, ever harassed her again. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim is GRANTED and that claim is DISMISSED.

**D.     Retaliation Claim.**

Ware claims that GEO violated § 704(a) of Title VII, 42 U.S.C. §§ 2000e-3(a), and RCW 49.60.210 when it terminated her employment. Ware claims that she was suspended, and eventually terminated, in retaliation for her complaint of sexual harassment. Both Plaintiff and Defendant seek summary judgment on this claim. Ware argues that GEO has not articulated a proper, legitimate, reason for its decision to terminate her employment. GEO, on the other hand, argues that Ware cannot establish a prima facie case of retaliation and that it has shown proper grounds for Ware's termination.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court articulated a three-part test for assessing the burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving, by a preponderance of the

evidence, a prima facie case of discrimination. *Id*. at 802. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence, that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id*. at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeny*, 439 U.S. 24, 25 (1978).

### 1. Plaintiff's Prima Facie Case.

To establish a retaliation claim under Title VII, a plaintiff must demonstrate that (1) he or she engaged in protected opposition to discrimination, (2) he or she suffered an adverse employment action, and (3) a causal link exists between the two. *See Jordan v. Clark*, 847 F.2d 1368 (9th Cir. 1988). Washington law is essentially the same. In order to establish a prima facie case of retaliatory discharge, a plaintiff must show that (1) he or she was engaged in a statutorily protected activity, (2) that the defendant discharged the plaintiff or took some other adverse employment action against him or her, and (3) that retaliation was a substantial factor behind the adverse action. *See Kahn v. Salerno*, 90 Wash.App. 110, 129, 951 P.2d 321 (1998). However, an employee is not protected from termination simply by engaging in protected activity; an employee may still be terminated for proper cause. *Id*.

#### a. Protected Activity.

Ware claims that she engaged in a protected activity when she complained to Officer Lopez about inappropriate comments made by Officer Hibbitt. In *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009), the Circuit Court determined that an employee engages in "protected activity" when a reasonable person would believe that the discriminatory conduct of which he or she complains is in violation of Title VII. The Court stated that the "reasonable person determination requires looking at

all the circumstances, including the frequency of the discriminatory conduct and its severity." *Id*. (quoting *Clark County School District v. Breeden*, 532 U.S. 268, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001) (internal citations omitted).

Ware alleges that Hibbit made numerous calls to her over a work phone, asking her to engage in sexual intercourse with him and be his "booty call" or "one night stand." A reasonable jury could determine that these calls took place. Further, given the alleged frequency of the calls and their sexual nature, a jury could determine that a reasonable person would find these comments offensive and perceive them as being in violation of Title VII. Therefore, for the purposes of establishing a prima facie case of retaliation, Ware engaged in protected activity when she made a complaint to Officer Lopez.

### b. Adverse Employment Action.

It is not disputed that Ware was suspended and eventually terminated from employment at GEO. These actions satisfy the element of "adverse employment action." *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion.")

### c. Causal Link.

Both federal and Washington statutory schemes recognize that, because unlawful motivation is not likely to be overt, it can and must often be proven by circumstantial evidence. The causal link between protected activity and adverse employment action can be inferred from the temporal relationship alone. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002); *Vasquez v. State*, 94 Wash.App. 976, 985, 974 P.2d 348 (1999).

In the case at bar, Ware was suspended from employment at GEO only days after her complaint to Captain Gabalis. Such proximity in time could suggest to the finder of fact that Ware's complaint

influenced her suspension and termination.  Further, it is not disputed that Captain Gabalis conducted the investigation into the charges against Ware.  Some circuits have held that if the individual who made the final termination decision, or initiates the complaint, is not knowledgeable of the protected activity, then there is no causal link between the protected activity and the adverse employment action.  The Ninth Circuit, however, recognizes the "cat's paw theory" of employer liability.  The "cat's paw theory" states that, even if the final decision maker is not knowledgeable of the protected activity, a subordinate's bias could, in one way or another, influence the ultimate decision to terminate the employee.  *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) ("We hold that if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process.")  While Captain Gabalis did not initiate the charges against Ware, nor did he make the final termination decision, he did conduct the investigation with the knowledge of Ware's complaint about Hibbitt.  And, while both Black and Brown were not aware of Ware's complaint, they both reviewed Captain Gabalis's investigation in making their decisions to terminate Ware.

The timing of Ware's suspension could have been nothing more than a coincidence, and Captain Gabalis's investigation could have been in no way tainted by his knowledge of Ware's complaint.  These determinations, however, must be made by the finder of fact; thus, the claim cannot be properly dismissed on summary judgment.  Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is DENIED.

### 2. GEO's Legitimate Reasons for Ware's Termination.

Plaintiff moves for summary judgment on her claim of retaliation. Washington follows the familiar *McDonnel Douglas* burden-shifting framework. If the plaintiff establishes a prima facie case, which Ware has, then the defendant may attempt to rebut the case by presenting evidence of a legitimate reason for the employment decision. The burden then shifts back to the plaintiff, who can attempt to prove the employer's reason is pretextual. *Kahn*, 90 Wash.App. at 129.

Ware argues that GEO has not adequately articulated a legitimate, nondiscriminatory reason for its decision to terminate her employment. This argument is based on Plaintiff's assertion that deponent James Black, as GEO's corporate representative in accordance with FRCP 30(b)(6), could not explain either the basis for the allegations against Ware, or why it was that she had been terminated. This Court is not prepared to grant summary judgment on this basis. While Black was unable to answer a number of questions asked by Plaintiff's attorney, Terry Venneberg, the Defendant asserts that Mr. Venneberg did not allow Black to review documents during the deposition that would have enabled him to answer the questions. Further, for purposes of summary judgment, other documents in the record sufficiently articulate non-discriminatory reasons for terminating Ware. Exhibit D to the Wigen Declaration, the response to Interrogatory No. 4, the deposition testimony of James Black in which he responded to the questions asked by Defendant's attorney, Joan Mell, and the Declaration of Mr. Brown all express GEO's legitimate reasoning for terminating Ware: she was found to have engaged in inappropriate behavior by blowing kisses to detainees, rubbing up against them, and flirting with them. It must be left to a jury to decide whether this reasoning was merely a pretext for retaliation. Therefore, Plaintiff's Motion for Summary Judgment on the retaliation claim is DENIED.

**E.     Conclusion.**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. #12] is GRANTED with respect to Plaintiff's claim of hostile work environment and DENIED with respect to Plaintiff's claim of retaliation. Plaintiff's Motion for Partial Summary Judgment [Dkt. #22] is DENIED.

DATED this 10th day of December, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE